Thank you. I'm not sure what to do about this, but at 5 of 9 this morning, I was handed what purports to be a Pelley supplemental excerpt of record, and I don't know if the Court is going to consider it or not and whether I should attempt to figure out what's in it. I haven't received any document like that, so we'll just have to... If I may, Your Honors, we raised three issues on appeal, and I'd like to address two of them. The first is the speedy trial violation, or certainly what we believe was one. And the second would be the adequacy of the Section 851 notice. And I think with respect to both of these issues, the fundamental problem is essentially the same, and that is that the Court put on the defendant the burden of prosecuting himself and the burden of correcting the government's mistakes. In each of these two issues, that was exactly the dynamic that was created by the Court's rulings. We recognize that Judge Jones is an experienced jurist, but with all respect to Judge Jones, his findings of fact are clearly erroneous. None of them are supported by the record, and most of them are directly contradicted. And the conclusions of law, which are essentially that the defendant was obliged to turn himself in, that the government had been sufficiently diligent, and it was somehow the defendant's obligation to present himself for prosecution, the conclusions of law, which is the essential, the essence of what Judge Jones ruled, is exactly the opposite of what the law calls for under dogged and underestablished principles of the Fifth and Sixth Amendments. Well, Counsel, what do we do with some of the facts here that this defendant changed his name, he evaded discovery, he was moving around? Well, I think that's a partial view of the record, Your Honor, and I think it's contradicted by significant facts in the record. Number one, there was evidence that he had obtained a second identification in the name of Westbrook, but there's also evidence that he continued to use the name Sparrow, and there is a mass of information about this defendant functioning in public spheres under the name Gregory Frank Sparrow. Number one, he owned property in that name, transacted property in that name, and properly recorded property in that name throughout this period. In fact, transactions under the name Gregory Frank Sparrow were a key aspect of what led to his ultimate apprehension. Number two, he paid taxes every year, state and federal, under the name Gregory Frank Sparrow, and he did it through an attorney in California. The government never made any effort to contact that attorney. Number three, he maintained bank accounts with his mother throughout California. The agents knew exactly where the mother— Those are all disputed issues of fact. Did the trial judge inform the jury that the government had the burden of proving the facts in this case? Your Honor, the facts have nothing to do with the speedy trial issue, Your Honor. That was resolved by a separate set of pretrial hearings. The jury was not presented with this question. This was findings of fact made by the court based on the evidence. How are we going to reverse when there's disputed issues of fact? Because the findings of fact are clearly erroneous. That's the standard the court has to use. I don't dispute that. But there's no question that they're erroneous. No case—let me put it this way, Your Honor. We have a principle articulated in Doggett. The United States Supreme Court established that principle. That the burden is on the government to prosecute criminal defendants. It is not on the defendants to prosecute themselves. Parker v. Wingo says the same thing. A number of cases do. There are Ninth Circuit cases that clearly follow Doggett as they must. You're not saying every time there's disputed issues of fact, the government loses. No, absolutely not. I'm saying that if you look—if you take the principle of Doggett and you apply it to these facts, there is no way that the findings made by the court can be upheld. This defendant functioned publicly for seven—he sued the government. In December of 1996, Gregory Frank Sparrow in the Central District of California filed a lawsuit against the United States government for return of $38,000 that had been improperly taken. The government didn't even—the government ignored that. It didn't note that fact. It missed it. The defendant collected rent from the county of Los Angeles in his name. That was not detected by any government agents. As I said, he paid taxes each and every year, state and federal. That was not detected. He recorded property in his own name continually. No case—if you accept the basic principle of Doggett, and obviously this court is not going to overrule Doggett, but if you accept the principle that a defendant has the right to be informed by the government if he is subject to prosecution and that it is the government's burden to bring him to trial, there is no justification for declining, in this case, to accord that right to this defendant. He was available, and the clearest indication of that is very simple. There's seven years of neglect. No case has yet accepted seven solid years of complete government neglect. There's no question that from the middle of 1996 to the middle of 2003, nothing of any significance was done to apprehend this man, even though, as I've identified in a number of particulars, he was functioning publicly in his own name. Do we have to find prejudice if— No. It's absolutely clear, Your Honor, that post-trial, I mean, a post-indictment delay does not require prejudice, a finding of prejudice, unless the fault lies with the defendant, which in this case it doesn't, and I'll explain that very simply, and that is as follows. When, after seven-plus years of complete neglect, somebody in government finally said, you know, let's try to find this guy, they did. Within a matter of months, even after seven years of neglect, he was still findable. The law imposes on the government the responsibility to prosecute people, and part of that responsibility is to investigate and find a defendant. Nothing was done to alert this man to the fact that he was wanted, to the fact that there was an indictment, to the fact that he had any obligation, and cases that we've cited make it clear. The fact that he used another identification is meaningless unless it is affirmatively established that he knew he was wanted in an indictment. No basis for that in this record. I'm not going to repeat everything you said, Your Honor, please. Do you want to say something about the 851 notice? I do. I do. I have about 38 seconds, which I'd like to use for that. And that is the exact same problem with the 851. At the very least, once the government had stricken the minimum mandatory language, there was an ambiguity. We believe it was clear that the 851 notice was no longer operative. Why would you think that based on this? All they were doing was striking the drug aspect. If you look at it— Just a minute. Let me ask my question. I'll spend more time with your 38 seconds figuring out what I was going to ask. My apologies. You'll have the time. Okay. The strike was of the language of the indictment, which directed itself only to the marijuana count, the volume. Okay. But the notice, 851 notice itself, used in the disjunctive both the amount of the drugs and the prior conviction, and they attached a copy of the prior conviction. Now, if they're striking the marijuana aspect, why would you believe that they're striking the entirety? Now, I know at the end of the case, probation office read it as if— that it was a 20-year max. But at the front end of the case, to the extent it's affecting your decisions to plead the client or whatever, why on the face of it does just the motion to strike do anything more than it most creates some ambiguity, which you might say, are you striking both or whatever? That's the essence of my question. I understand that. Thank you. Here's the point. The indictment has a one-count indictment. It was just a marijuana indictment, the second paragraph of which said there was more than 100 kilos involved. Therefore, the government is alleging a mandatory minimum. The 851 notice then said, giving notice to the defendant that we intend to rely on a prior because there is a mandatory minimum and this will raise the mandatory minimum. I don't have the exact language, but 851 notice is clear. It is specifically tied to the mandatory minimum. The government then realizes that it's not 100 kilos, and they dismiss the mandatory minimum. Well, now, wait a minute. Here's what it actually said. The notice of the enhancement says, the government seeks a mandatory minimum term of imprisonment of 10 years, imprisonment since this offense involves more than 100 kilograms of marijuana and because defendant has a prior conviction in the district court C attached. Now, what's your argument that that is linking? Because the government gives notice of intent to seek enhanced punishment. The government seeks a mandatory minimum of 10 years because there was more than 100 kilograms involved and he has a prior. Once that is tied to the allegation of 100 kilograms and the mandatory minimum of 5, which the government is saying we're going to raise to 10 because there's a prior, but then they realize there's no 100 kilograms, so there is no mandatory minimum, and they then simply strike paragraph 2, which is the mandatory minimum. The enhancement was specifically tied to the mandatory minimum. Once the mandatory minimum was eliminated, the enhancement has nothing to attach to. The government believed that that was the effect. We believe that that was the effect. And once again, we are in a situation where at the very least there's an ambiguity in the record. We believe that we have the right to count on the absence of a notice. We are not an adversarial system. The government has given no notice. The court itself says this is a very strong argument, and at page 88 of our excerpt you'll find the court saying, I wouldn't be surprised if the Ninth Circuit disagreed with me. Reasonable minds can differ. The point is if reasonable minds can differ about whether adequate notice has been given, at the very least the rule of lenity should operate. Thank you, counsel. Your time has expired. You went over, but that's fine. Thank you very much. Thank you. We'll hear from the government. I don't know what you think you're doing with that. I can't see it, so I don't need to see it. Good morning, Your Honors. I'm John Hobbs for the United States. I'd like to first correct two mistakes I made in my brief. On page 5, line 4, I wrote, Agent Hook interviewed several witnesses, including defendant's parents. Those last three words are incorrect. It's a mistake. Hook never really did ever interview the defendant's parents. That was done by deputy marshals from San Jose, California, when in 2003 they contacted his mother and she said she hadn't seen him in 10 years. I also made a mistake on page 7, where I wrote, the defendant's rental properties were managed by others and the defendant did not collect the money. That's wrong. Hook testified that the defendant and others collected his rents. He never actually saw anybody do it, but he testified to that effect, and my brief was wrong. Counsel accuses the government of misrepresenting the facts and cites repeated efforts that he cites, claims that the government is trying to mislead the court, lack of record cites, and the like. And I apologize for a lack of citation to the record. I could have been much more specific in my four-and-a-half pages of facts summary where I tried to replicate what the court heard in 12 witnesses in seven hours and hundreds of exhibits during that day-long hearing. When the stake in this case is five more years in prison, why should we excuse the government in it making clerical mistakes that are confusing? You shouldn't, Your Honor. I'm to be blamed for those clerical mistakes, and I accept that. I'm talking about the striking of the notice. That's what I'm talking about. The 851 Enhancement, Your Honor? Yes. Your Honor, the 851 Enhancement, as you see in supplemental. . . You say there was a clerical mistake or it was done intentionally? There was no clerical error with respect to the 851 Enhancement. This was what the government did was intentional? No, Your Honor. There was no intentional misleading at any time. Never, ever was there any intentional misleading. I made a mistake in citing to the record certain conclusions that I've corrected so far, and I have a supplemental excerpt of record to cite each one of those record citations that belie what the defendant has said here today, that the court in its 15-page opinion had no basis, that it was clearly erroneous, that there was nothing in the record to support its conclusion, and nothing could be further from the truth. Counsel, you're talking about a supplemental excerpt which none of us have received. I understand, Your Honor. Today is the day of oral argument. This case was scheduled perhaps two months ago. What's your explanation for trying to put something like that? I'm just offering, Your Honor, that if the court wants additional citation to the record, because I didn't make specific citations in my four pages of facts, that I can provide the court, and I've given counsel a copy of the excerpt of the record the court had, or I can cite only to the record, which I'm prepared to do, and you won't have to look at the supplemental excerpt of record, to show why the court had a reasonable basis to find that the government pursued the defendant with reasonable diligence and there was no prejudice to him. The court's findings were not clearly erroneous, and its findings with regard to the speedy trial conclusion were correct on the law, and I would like to cite to the record. The court has not yet been presented with whatever you are thinking of presenting to the court, nor has it had a chance to decide whether, indeed, it would accept it, if presented at this very late date. Very well, I understand, Your Honor. I just wanted to have it available. If the court wanted, I would hand it up to the court. You could follow me if you wished, or I didn't bring copies for your clerks, but I can cite to the record, and if permitted to do so, I will do it right now, that this court held this defendant knew he was wanted and fled, and it knows because on the day he showed up in Portland, on the 10th day of January, where he pretended to be Steve Casey and called on a telephone, picked up the mail, tried to pick up the mail while in the mail toolbox, when he had the driver's license that you see over here as Government Exhibit 24, with an Aptos, California address, saying that he was between places and moving, that day was the last day any law enforcement officer saw him because he vanished from the face of the earth right after that day at 3 o'clock in the afternoon. Wait a minute, wait a minute. Now, you're saying that's what transpired at the front end, right? Yes, sir. Now, seven years elapsed after the indictment, and you say he disappeared from the face of the earth, and yet the evidence shows that, in fact, he did use his own name in a variety of transactions. So, what do you mean by he disappeared from the face of the earth? He disappeared, Your Honor, because he took another identity by the name of Gregory Westbrook. Counsel, please speak to the microphone because this is taped. I'm sorry, Your Honor. This exhibit shows Gregory Neal Westbrook in Lake Hughes, California, with an issue date of 1998. This California driver's license is the first of two licenses this defendant took when he assumed this identity. He assumed and became another man called Gregory Westbrook, bought two airplanes, one for $80,000 in cash, and lived a life as Gregory Westbrook for many years as he was underground. Now, he still had payments sent to his mother's place in Aptos, California. Were any of his uses of the name Sparrow of record discoverable during the time, during the seven-year period, while he was using Westbrook? Yes, Your Honor. So, he didn't disappear from the face of the earth. That was hyperbole, was it not? I believe he disappeared and became Westbrook while still receiving payments at his mother's place. Well, disappear means you don't know where he is. He's underground. He's not using his real name. There's no way to find him because the Sparrow name has now been subsumed into and transferred over and obliterated from discovery. That's not what the facts show, is it? The facts show that Sparrow actually used his name for some parts of his life and used Westbrook for other parts of his life. That's correct, Your Honor. Now, what do you mean by he disappeared from the face of the earth? Bad choice of words, Your Honor. I should say that he left promptly from law enforcement's view and his various properties. On the day he was in Portland, he disconnected his phone at 3.30 in the afternoon when he was first contacted. The next day, his colleague, who had also shipped marijuana to Philadelphia, was arrested, and he disappeared on the 11th. Both were the same kind of shipments. The shipment that was made to Cleveland of more marijuana was never claimed. The defendant dropped off his two dogs to his girlfriend and said, I'm leaving. There are seven years that go by, and the question is, is the man trying to evade discovery? You're suggesting that because he adopted an alias identity, that's the end of it. Is it at all relevant that the fact is that had the agents gone on some databases or whatever, that they could have found the Sparrow name in various publicly identifiable transactions, if those were the facts? Your Honor, during the day-long testimony, several marshals testified, and other witnesses testified, of their vigorous pursuit of this defendant, serving search warrants in three counties in California, pursuing with phone calls and subpoenas for many, many years, trying to find Sparrow. Because that first month, he disappeared when he dropped his dogs off. Counsel, why don't you specifically respond to the facts that were identified or highlighted by Mr. Weinberg? His statements of fact, Your Honor, and the arguments that he made were made to the court, and they can be construed and recognized as the same argument that he made to the court. You could say that Sparrow … We're on appeal here, so we have a chance to take another look. Do we not? We do, Your Honor. And the court rejected his view of the evidence and the fact that Sparrow didn't know he was wanted. The court specifically found Sparrow knew he was wanted, had various mail drops and false addresses, and dropped from view of law enforcement right after the 10th of January. Well, what about the specific point that Mr. Weinberg makes, that he paid taxes under his own name? He did, Your Honor. He had a lawyer who used a P.O. box in Rescue, California, filing taxes for a period of years. And that's undisputed. And that he maintained a joint bank account under his name with his mother? His mother received a lot of rent payments and other things in her house in Aptos, and she was uncooperative, and the court found that the Aptos lead was going to go nowhere, that the family was covering for him. And the reason he used Aptos, and he did so because the marshals knew if they used Aptos, he knew that that wasn't going to work to catch him because he would put the payments and receive payments with his mother and continue to receive money, but the government's never going to find him by going to Aptos. And they found out, she said she hadn't seen him for 10 years, even though she was collecting rents and involved in other transactions for the defendant. He's a wealthy man. That's one of the reasons the court imposed a $240,000 fine on this case. Your Honor, the defendant, the same day after he was contacted in Oregon, he asked his next-door neighbor to move his motor home, and he said he didn't know when he was going to be back. He also told others. Counsel, you're going to run out of time, and I would like to get the 851 issue, get your version of that. Your Honor, account one of the indictment alleged a mandatory minimum amount of 100 kilos, and that meant he was facing 5 to 40. When I filed the 851 enhancement, I said the defendant has a prior felony conviction, and therefore his 5 to 40 becomes 10 to life. And that's what the statutory mandatory minimum would be based on drug quantity. It's a true fact that the defendant's enhancement under 851 was the maximum punishment is doubled if he has a prior drug felony conviction. And that was also another aspect of the 851 enhancement. He suffered a mandatory 10 to life because of the drug quantity, but he faced a doubling of whatever the statutory maximum was because of his prior conviction, whether it was 5 or 20. What was that? So at the time you made your argument at closing that the sentence of, well, in the jury instructions, I guess, you said the sentence of the defendant can be no more than 20 years. Yes, Your Honor. How did you get to that? I got that because I thought it was a 20-year felony because it was more than 50 kilos and it was less than 100. It was 97.5 kilos. So I'm thinking in my mind 20-year felony. Well, because of Apprendi, and even though we all knew it was 97 kilos and that there were hundreds of kilos and other marijuana shipments and ephedrine and other methamphetamine considerations, we were only limited to what the indictment said. An indictment said 100 kilos. We didn't have 100 kilos, so you go to the default provisions for less than 50 kilos, so it became a five-year maximum. The court doubled the maximum because of the 851 enhancement as it was entitled to do. Didn't have to give him 10 years. What's your response to Mr. Weinberg's point that when you knew that you were going to be below 100 and you notified the other side of that effect, that that vitiated the notice? Your Honor, my notice said for two reasons. I never withdrew this piece of paper that was filed well after the indictment and with the copy of the judgment. That's clear. His point is that it didn't matter whether you withdrew it or not. It was automatically withdrawn by virtue of the fact that the excess of 100 was being withdrawn. Not the notice, but the alteration of the count. In my opinion, Your Honor, it was surplusage to put in there that the mandatory minimum because of 100 kilos affected his doubling of the maximum statutory penalty. What I should have said was because he has a prior felony conviction, he faces enhanced penalties. I filed the enhancement, and the Ninth Circuit law is as long as he has notice of it, and he couldn't challenge it because he's more than five years old, as long as he gets notice of it and he doesn't challenge the effect of that prior conviction, then he faces enhanced punishment. So Ninth Circuit law is once that enhancement is filed and he has an opportunity to respond and didn't respond, he can receive double the maximum punishment for the statute. All right. Thank you, Counsel. Something that you withdrew. No, Your Honor. I didn't withdraw the notice of enhancement found at Government's Exhibit 2. I only struck the second paragraph of the indictment, which said 100 kilos or more. Because of the defendant's gratuitous luck in that regard, he escaped what could have been a life sentence. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision, and we will hear argument in all-state insurance versus greeting.
judges: Ferguson, O'scannlain, Fisher